FILED

JUN 19 2008

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | No. 07 CR 50070-04 |
| vs. ) | Judge Frederick J. Kapala |
| ) | |
| HAROLD L. RAINS ) | |

## PLEA AGREEMENT

1. This Plea Agreement between the United States Attorney for the Northern District of Illinois, PATRICK J. FITZGERALD, and defendant HAROLD L. RAINS, and his attorney, ROBERT FAGAN, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure and is governed in part by Rule 11(c)(1)(C) and Rule 11(c)(1)(A), as more fully set forth below. The parties to this Agreement have agreed upon the following:

### Charges in This Case

2. The superseding indictment in this case charges defendant with perjury, in violation of Title 18, United States Code, Section 1623.

3. Defendant has read the charges against him contained in the superseding indictment, and those charges have been fully explained to him by his attorney.

4. Defendant fully understands the nature and elements of the crimes with which he has been charged.

## Charge to Which Defendant is Pleading Guilty

5. By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to Count Three of the superseding indictment. Count Three charges defendant with perjury, in violation of Title 18, United States Code, Section 1623.

## Factual Basis

6. Defendant will plead guilty because he is in fact guilty of the charge contained in Count Three of the superseding indictment. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt:

   a. On December 4, 2007, there was convened, at Rockford, a grand jury, known as the December 2006 Grand Jury. This grand jury was charged with investigating allegations of various violations of United States law, including whether Samer Aljabari, Matthew McMeekan, and Christopher Taylor violated and conspired to violate Title 18, United States Code, Section 844(i). On that same date, defendant, having duly taken an oath that he would testify truthfully, testified on his oath in a proceeding in front of the December 2006 Grand Jury. It was material to the proceeding whether defendant had any conversations with defendants Aljabari, McMeekan and Taylor, regarding starting a fire at the Oregon Smoke Shop.

   b. On December 4, 2007, at Rockford, defendant, while under oath in a proceeding before a grand jury of the United States, knowingly made false material declarations, to wit:

2

    i)    Q:    When you were out there, well, when you were out there, did you notice anything unusual?

           A:    Yeah. I went out there, I, you know, got my smokes, got my lighter, locked my doors and then looked over there and there was a black, black figure sitting there by the bushes and they took off running when I started walking up towards them.

    ii)    Q:    And this person you saw, did, did you recognize the person?

           A:    I didn't see a face or anything. He was wearing all black.

           Q:    Okay. And so you have, you have no idea who it was?

           A:    No.

    iii)    Q:    Okay. Did you ever have any conversations with Matt McMeekan about burning down the –

           A:    No.

           Q:    smoke shop?

           A:    No.

    c.    Between July 2007 and October 4, 2007, the Oregon Smoke Shop was a business located at 210 South Fourth Street, Oregon, Illinois consisting of a building, fixtures, and equipment. The Oregon Smoke Shop was engaged in activities affecting interstate commerce in that it sold tobacco and tobacco-related products which had previously been transported in interstate commerce to retail customers. Sam's Wholesale Tobacco and Gifts (hereinafter "Sam's Wholesale Tobacco") was a business located at 204 West Washington Street, Oregon, Illinois and sold retail tobacco and tobacco-related products at that location. Co-defendant Aljabari worked at Sam's Wholesale Tobacco as a

clerk and also resided at that address in a room in the back of the business. Sam's Wholesale Tobacco was owned by a relative of Aljabari.

d. Defendant was first approached by Aljabari to burn down the Oregon Smoke shop approximately 6 months prior to October 2007. After Aljabari approached him, defendant, Aljabari and McMeekan had further discussions at Aljabari's smoke shop about burning down the Oregon Smoke Shop. Aljabari said he would pay defendant and McMeekan $1,000 each to burn down the Oregon Smoke Shop. Aljabari said that he wanted the smoke shop burned down to eliminate it as a competitor of his relative's smoke shop. In September 2007, defendant told McMeekan that defendant was not planning on being involved in starting the fire but asked McMeekan not to tell Aljabari because defendant still wanted Aljabari to pay defendant for helping burn down the Oregon Smoke Shop.

e. At approximately 2:00 a.m. on October 4, 2007, defendant went out to his vehicle which was parked near a residence in Oregon, Illinois where defendant was temporarily residing with another individual (hereinafter "Individual A"). Defendant observed Taylor near Individual A's residence and began talking to him. Taylor said that he and McMeekan intended to burn down the Orgeon Smoke Shop and that Taylor intended to break Individual A's car window to cause the police to respond to that residence. Defendant said that instead of Taylor breaking the car window, defendant would call the Oregon Police Department and falsely report a suspicious person in near Individual A's vehicle. Defendant believed that he would be paid between $500 to $700 from the money that McMeekan and

Taylor were going to receive from Aljabari for creating a diversion by making a false report to the police. When Taylor left, defendant called the Oregon Police Department and falsely reported that he had observed an unknown individual near Individual A's vehicle. After defendant called the police and an officer responded to Individual A's residence, defendant sent a text message to McMeekan telling him to "go," meaning that McMeekan could go and start the fire at the smoke shop.

  f. Defendant's statements to the federal grand jury on December 4, 2007 as set forth in paragraph 6(b)(i) and (ii) were false. When defendant testified that he did not recognize the person outside individual A's residence, did not see the person's face and that he had no idea who the person was, he knew those statements were false because he had in fact recognized the person as Taylor and talked to Taylor about Taylor and McMeekan burning down Oregon Smoke Shop that night. Defendant's statements to the federal grand jury on December 4, 2007 as set forth in paragraph 6(b)(iii) were also false. When defendant testified that he did not have any conversations about burning down the smoke shop, defendant knew that statement was false because he had discussed burning down the Oregon Smoke Shop with Aljabari and McMeekan on several occasions prior to October 4, 2007.

  7. The foregoing facts are set forth solely to assist the court in determining whether a factual basis exists for defendant's plea of guilty, and are not intended to be a complete or comprehensive statement of all the facts within defendant's personal knowledge regarding the charged crimes and related conduct.

**Maximum Statutory Penalties**

8. Defendant understands that the charge to which he is pleading guilty carries the following statutory penalties:

　　a. A maximum sentence of 5 years' imprisonment. This offense also carries a maximum fine of $250,000. Defendant further understands that the judge also may impose a term of supervised release of not more than three years.

　　b. ~~Defendant further understands that the Court must order restitution to the victims of the offense in an amount determined by the Court.~~ The Court also may order restitution to any persons as agreed by the parties.

　　c. In accord with Title 18, United States Code, Section 3013, defendant will be assessed $100 on the charge to which he has pled guilty, in addition to any other penalty or restitution imposed.

**Sentencing Guidelines Calculations**

9. Defendant understands that in imposing sentence the Court will be guided by the United States Sentencing Guidelines. Defendant understands that the Sentencing Guidelines are advisory, not mandatory, but that the Court must consider the Guidelines in determining a reasonable sentence.

10. For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

a. **Applicable Guidelines.** The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2007 Guidelines Manual.

b. **Offense Level Calculations.**

i. The base offense level for the charge in Count Three of the superseding indictment is 18, pursuant to Guidelines §§ 2J1.3(c)(1), 2X3.1(a) and 2K1.4(a)(1)(A) and (B).

ii. Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline §3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine or restitution that may be imposed in this case, a two-level reduction in the offense level is appropriate.

iii. In accord with Guideline §3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline §3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level

reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

    c.    **Criminal History Category.** With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government, defendant's criminal history points equal zero and defendant's criminal history category is I.

    d.    **Anticipated Advisory Sentencing Guidelines Range.** Therefore, based on the facts now known to the government, the anticipated offense level is 18 [handwritten: 15 OP by HR], which, when combined with the anticipated criminal history category of I, results in an anticipated advisory Sentencing Guidelines range of 18 to 24 months' imprisonment, in addition to any supervised release, fine, and restitution the Court may impose.

    e.    Defendant and his attorney and the government acknowledge that the above Guideline calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional Guideline provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final Guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation

8

officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

        f.      Both parties expressly acknowledge that this plea agreement is not governed by Fed.R.Crim.P. 11(c)(1)(B), and that errors in applying or interpreting any of the Sentencing Guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the Guidelines. The validity of this Plea Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Plea Agreement, on the basis of such corrections.

### Cooperation

11.    Defendant agrees he will fully and truthfully cooperate with the United States Attorney for the Northern District of Illinois in any matter in which he is called upon to cooperate. This cooperation shall include providing complete and truthful information in any investigation and pre-trial preparation and complete and truthful testimony in any criminal, civil or administrative proceeding. Only the United States Attorney for the Northern District of Illinois may require defendant's cooperation pursuant to this Plea Agreement. Defendant agrees to the postponement of his sentencing until after the conclusion of his cooperation.

## Agreements Relating to Sentencing

12. The government agrees to recommend that sentence be imposed within the applicable guidelines range and to make no further recommendation concerning at what point within the range sentence should be imposed.

13. It is understood by the parties that the sentencing judge is neither a party to nor bound by this Plea Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

14. The defendant agrees not to request that the court exercise its discretion, pursuant to *United States v. Booker*, 125 S.Ct. 738 (2005), to impose a sentence below the applicable Guideline range.

15. Regarding restitution, defendant also agrees to pay restitution, arising from the conduct set forth above, in the amount of $500 to Al and Dawn Scott, in the amount of $38,211.35 to State Auto Insurance Companies ~~in the amount of $38,221.35~~, and an amount to be determined by the Court at sentencing to Ramandan Ashour, pursuant to Title 18, United States Code, §§ 3663(a)(3) and 3664. Restitution shall be due immediately, and paid pursuant to a schedule to be set by the Court at sentencing.

16. Defendant agrees to pay the special assessment of $100 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

17. After sentence has been imposed on the counts to which defendant pleads guilty as agreed herein, the government will move to dismiss the remaining counts of the superseding indictment as to this defendant.

### Presentence Investigation Report/Post-Sentence Supervision

18. Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope and extent of defendant's conduct regarding the charges against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to the issue of sentencing.

19. Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline §3E1.1 and enhancement of his sentence

for obstruction of justice under Guideline §3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

20. For the purpose of monitoring defendant's compliance with his obligations to pay a fine and restitution during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Plea Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Plea Agreement

21. This Plea Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 07 CR 50070-04.

22. This Plea Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver or release by the United States or any of its agencies of any administrative or judicial civil claim, demand or

cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state or local prosecuting, administrative or regulatory authorities, except as expressly set forth in this Agreement.

### Waiver of Rights

23. Defendant understands that by pleading guilty he surrenders certain rights, including the following:

   a. **Trial rights.** Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

   i. The trial could be either a jury trial or a trial by the judge sitting without a jury. Defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

   ii. If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

    iii. If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt and that it was to consider each count of the superseding indictment separately. The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

    iv. If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

    v. At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

    vi. At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

    vii. At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

  b. **Waiver of appellate and collateral rights.** Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial. Defendant is aware that Title 18, United States Code, Section 3742 affords a defendant the right to appeal his conviction and the sentence imposed. Acknowledging this, defendant knowingly waives the right to appeal his conviction, any pre-trial rulings by the Court, and any part of the sentence (or the manner in which that sentence was determined), including any term of imprisonment and fine within the maximums provided by law, and including any order of restitution or forfeiture, in exchange for the concessions made by the United States in this Plea Agreement. In addition, defendant also waives his right to challenge his conviction and sentence, and the manner in which the sentence was determined, in any collateral attack or future challenge, including but not limited to a motion brought under Title 28, United States Code, Section 2255. The waiver in this paragraph does not apply to a claim of involuntariness, or ineffective assistance of counsel, which relates directly to this waiver or to its negotiation.

  c. Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

24.     By entering this plea of guilty, defendant also waives any and all right the defendant may have, pursuant to 18 U.S.C. §3600, to require DNA testing of any physical evidence in the possession of the Government. Defendant fully understands that, as a result of this waiver, any physical evidence in this case will not be preserved by the Government and will therefore not be available for DNA testing in the future.

### Other Terms

25.     Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine and restitution for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

26.     Defendant understands that the government has the right to seek defendant's truthful testimony before a grand jury or a district court.

### Conclusion

27.     Defendant understands that this Plea Agreement will be filed with the Court, will become a matter of public record and may be disclosed to any person.

28.     Defendant understands that his compliance with each part of this Plea Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any

of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

29. Should the judge refuse to accept defendant's plea of guilty, this Plea Agreement shall become null and void and neither party will be bound thereto.

30. Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Plea Agreement to cause defendant to plead guilty.

31. Defendant acknowledges that he has read this Plea Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: 6/19/08

_____  _____
PATRICK J. FITZGERALD         HAROLD L. RAINS
United States Attorney        Defendant

_____  _____
JOSEPH C. PEDERSEN            ROBERT FAGAN
Assistant U.S. Attorney       Attorney for Defendant

No.   07 CR 50070-04

UNITED STATES DISTRICT COURT
for the
NORTHERN DISTRICT OF ILLINOIS
Western Division

UNITED STATES OF AMERICA

V

HAROLD L. RAINS

PLEA AGREEMENT

Office of
UNITED STATES ATTORNEY
308 West State Street-Room 300
Rockford, Illinois 61101

815-987-4444